UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────────

BONNIE HUDSON, on behalf of S.G.,

                Plaintiff,

       V.

JO ANNE B. BARNHART,[1]

                Defendant.

─────────────────────────────────────

**REPORT AND
RECOMMENDATION**

06-CV-1342
(LEK/VEB)

## I. INTRODUCTION

In August of 2004, Plaintiff Bonnie Hudson filed an application for Supplemental Security Income ("SSI") benefits under the Social Security Act on behalf of her grandniece and ward, S.G. ("Claimant").[2]  The application was denied by the Commissioner of Social Security in September 2006.

Plaintiff, through her attorney, Louise Marie Tarantino, Esq., commenced this action on November 3, 2006, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1).  Plaintiff seeks judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On March 20, 2009, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 14).

─────────────────────

[1]Michael J. Astrue was sworn in as the Commissioner of Social Security on February 12, 2007. The Clerk of the Court is hereby directed to substitute Commissioner Astrue as the defendant in this action pursuant to Rule 25 (d)(1) of the Federal Rules of Civil Procedure.

[2]Claimant is a minor.  Thus, in accordance with Rule 5.2 (a) of the Federal Rules of Civil Procedure, she will be referred to as "Claimant" or by her initials in this Report and Recommendation.

## II. BACKGROUND

The relevant procedural history may be summarized as follows.  Plaintiff is the legal guardian of Claimant, a minor child.  On August 7, 2004, Plaintiff filed an application for SSI benefits on Claimant's behalf. (T at 52-54).[3]  The application was denied on October 27, 2004.  (T at 33-36).  Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ") on  November 21, 2004. (T at 37-39).  A hearing was held in Albany, New York on January 4, 2006, and March 15, 2006, before ALJ Carl Stephan.  (T at 251-74).  Plaintiff appeared at the initial hearing and requested an adjournment to obtain counsel.  (T at 251, 256).  The hearing was adjourned.  Plaintiff, represented by counsel, appeared with Claimant at a hearing held on March 15, 2006.  (T at 259).

On March 30, 2006, the ALJ issued a written decision denying the application for SSI benefits.  (T at 14-29).  ALJ Stephan's decision became the Commissioner's final decision on September 8, 2006, when the Appeals Council denied Plaintiff's request for review.  (T at 3-6).

Plaintiff, acting on Claimant's behalf, commenced this action on November 3, 2006. (Docket No. 1).  The Commissioner interposed an Answer on February 23, 2007. (Docket No. 6).   Plaintiff  filed a supporting Brief on May 22, 2007. (Docket No. 12).   The Commissioner filed a Brief in opposition on July 6, 2007. (Docket No. 13).

Pursuant to General Order No. 18, as issued by the Chief District Judge of the Northern District of New York, "[t]he Magistrate Judge will treat the proceeding as if both

---

[3]Citations to "T" refer to the Administrative Transcript.  (Docket No. 8)

parties had accompanied their briefs with a motion for judgment on the pleadings . . . ."

## III. DISCUSSION

### A.      Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both

sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir.1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

An individual under the age of eighteen is disabled, and thus eligible for SSI benefits, if he or she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i). However, that definitional provision excludes from coverage any "individual under the age of [eighteen] who engages in substantial gainful activity...." 42 U.S.C. § 1382c(a)(3)(C)(ii).

By regulation, the agency has prescribed a three-step evaluative process to be employed in determining whether a child can meet the statutory definition of disability. 20 C.F.R. § 416.924; Kittles v. Barnhart, 245 F.Supp.2d 479, 487-88 (E.D.N.Y.2003); Ramos v. Barnhart, 02 Civ.3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003).

The first step of the test, which bears some similarity to the familiar five-step analysis employed in adult disability cases, requires a determination of whether the child has

4

engaged in substantial gainful activity. 20 C .F.R. § 416.924(b); <u>Kittles</u>, 245 F.Supp.2d at 488. If so, then both statutorily and by regulation the child is ineligible for SSI benefits. 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the claimant has not engaged in substantial gainful activity, the second step of the test next requires examination of whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are properly regarded as severe, in that they cause more than a minimal functional limitation. 20 C.F.R. § 416.924(c); <u>Kittles</u>, 245 F.Supp.2d at 488; <u>Ramos</u>, 2003 WL 21032012, at *7.

If the existence of a severe impairment is discerned, the agency must then determine, at the third step, whether it meets or equals a presumptively disabling condition identified in the listing of impairments set forth under 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Listings"). Id. Equivalence to a listing can be either medical or functional. 20 C.F.R. § 416.924(d); <u>Kittles</u>, 245 F.Supp.2d at 488; <u>Ramos</u>, 2003 WL 21032012, at *7. If an impairment is found to meet, or qualify as medically or functionally equivalent to, a listed disability and the twelve-month durational requirement is satisfied, the claimant will be deemed disabled. 20 C.F.R. § 416.924(d)(1); <u>Ramos</u>, 2003 WL 21032012, at *8.

Analysis of functionality is informed by consideration of how a claimant functions in six main areas referred to as "domains." 20 C.F.R. § 416.926a(b)(1); <u>Ramos</u>, 2003 WL 21032012, at *8. The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those domains include: (i) [a]cquiring and using information; (ii) [a]ttending and completing tasks; (iii) [i]nteracting and relating with others; (iv) [m]oving about and manipulating objects; (v) [c]aring for [oneself]; and (vi) [h]ealth and physical well-being. 20 C.F.R. § 416.926a(b)(1).

Functional equivalence is established in the event of a finding of an "extreme" limitation, meaning "more than marked," in a single domain. 20 C.F.R. § 416.926a(a); Ramos, 2003 WL 21032012, at *8. An "extreme limitation" is an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(I) (emphasis added).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains. 20 C.F.R. § 416.926a(a); Ramos, 2003 WL 21032012, at *8. A "marked limitation" exists when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

## B.    Analysis

### 1.    Commissioner's Decision

The ALJ noted that Claimant was born on March 6, 1996, and thus was a "school-age child" pursuant to 20 CFR § 416.926a(g)(2) on August 6, 2004, the date the application for benefits was filed. (T at 20).  The ALJ found that Claimant had not engaged in substantial gainful activity at any time relevant to the decision.  (T at 20).  He further determined that Claimant suffers from the following severe impairments pursuant to 20

6

CFR § 416.924 (c): fetal alcohol syndrome, oppositional defiant disorder, and attention deficit hyperactivity disorder ("ADHD").  (T at 20).

However, the ALJ found that Claimant did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix I (the "Listings").  (T at 20-21).

In addition, the ALJ concluded that Claimant did not have an impairment or combination of impairments that functionally equals the Listings. (T at 21).  As to the six domains of function: the ALJ determined that Claimant had: (1) less than marked limitation in acquiring and using information; (2) less than marked limitation in attending and completing tasks; (3) less than marked limitation in interacting and relating to others; (4) no limitation in moving about and manipulating objects; (5) less than marked limitation in the ability to care for herself; and (6) no limitation with regard to health and physical well-being. (T at 22-28).

In light of the foregoing, the ALJ found that Claimant had not been disabled, as defined under the Act, since the date the application was filed.  As noted above, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review.  (T at 3-6)

### 2.    Plaintiff's Arguments

Plaintiff offers the following three (3) arguments in support of her contention that the Commissioner's decision should be reversed.  First, she argues that Claimant is disabled because she meets § 112.11 of the Listings (ADHD).   Second, Plaintiff asserts that Claimant's impairments are functionally equivalent to the Listings. Specifically, Plaintiff contends that Claimant has a marked limitation in acquiring and using information, a

marked limitation in attending and completing tasks, a marked limitation in the domain of interacting and relating, and a marked limitation in terms of caring for herself.  Third, Plaintiff argues that the ALJ failed to give proper consideration to the effect of a structured educational setting.

As discussed in detail below, the ALJ relied heavily upon records from Claimant's school teachers when determining the extent of her limitations.  However, Claimant attends school in a structured setting, with a 5:1 student/teacher ratio for resource room services five hours a week. In addition, she receives special instruction in reading and math and special accommodations for test taking.  (T at 136-37).  The reports prepared by her teachers indicate that Claimant requires "frequent" monitoring, "constant check-in," and "a lot of help" to ensure appropriate behavior and learning.  (T at 124-25, 128, 228).

The "Commissioner's regulations require the ALJ to consider the effects of a structured or highly supportive setting . . . on the claimant's functioning and, if the claimant's symptoms or signs are controlled or reduced by the structured environment, the ALJ is required to consider the claimant's functioning outside of the highly structured setting." Smith v. Massanari, No. 00-CV-0402, 2002 WL 34242375, at *6 (W.D.N.Y. Mar. 17, 2002) (citing 20 C.F.R. § 416.924c (a),(d)).

In other words, the ALJ was obligated to consider Claimant's level of functioning outside of her structured educational environment.  See id.; see also Straw v. Apfel, No. 98 Civ. 5089, 2001 WL 406184, at *6 (S.D.N.Y. Apr. 20, 2001).  As discussed below, the ALJ failed to adequately develop the record in this regard as to certain of the domains of functioning and this Court therefore recommends remand for further development of the record.

### a.    § 112.11 of the Listings

To meet the impairment set forth in § 112.11 (the Listing for ADHD), the record must contain: (A) medically documented findings of marked inattention, marked impulsiveness, and marked hyperactivity; (B) resulting in a marked impairment in at least two of the following: cognitive/communicative function, social functioning, personal functioning, or maintaining concentration, persistence and pace. See 20 C.F.R. pt. 404, Subpt. P, App. 1, at Listing 112.11; see also Brown v. Commissioner of Social Security, 430 F.Supp.2d 102, 104 (W.D.N.Y. 2005).

In the present case, there is no dispute that Claimant has been diagnosed with ADHD (T at 121) and that the record contains medically documented findings of marked inattention, impulsiveness, and hyperactivity. (T at 111, 112-13, 119).  However, the ALJ concluded that Claimant's conditions did not result in a marked impairment as to at least two of the required "Section B" criteria.

In reaching this conclusion, the ALJ discounted testimony from Plaintiff, who testified as Claimant's guardian and primary care giver. (T at 21-22).  Plaintiff testified as to frequent instances of impulsiveness and hyperactivity, including throwing a cat across the room, becoming easily distracted, causing an hour-long, school-wide lockdown by hiding from teachers and staff, and acting belligerent and threatening toward others. (T at 265-66, 273). In sum, the ALJ concluded that reports prepared by Claimant's teachers regarding her academic progress were, on balance, entitled to greater weight with regard to the extent and severity of Claimant's limitations.  (T at 22).

The ALJ's decision to afford greater weight to the assessment of Claimant's classroom teachers, rather than her primary caregiver, could be sustained if it were

accompanied by consideration of the impact of the structured school setting on the severity of Claimant's limitations.  The ALJ certainly had an opportunity to develop the record in this regard.  Plaintiff testified that Claimant lives with six (6) other individuals, at least some of whom presumably could have been called to testify regarding Claimant's limitations outside of the school setting.  Instead, the testimony as to that issue was limited to approximately ten (10) pages of hearing testimony by the Plaintiff. (T at 262-273).  As noted above, the ALJ was obligated under the Commissioner's own regulations to "consider the claimant's functioning outside of the highly structured setting." Smith, 2002 WL 34242375, at *6.

Because the record concerning Plaintiff's functioning outside of the structured school setting is incomplete, this Court finds that remand for further development is necessary.

### b.   Marked Limitations as to Domains

As discussed above, a child functionally equals a listed impairment if he or she has an "extreme" impairment in one of six of the domains of functioning or "marked" impairment in two of six of the domains.  For the reasons set forth below, this Court finds that the ALJ's findings as to some, but not all of the domains, were supported by substantial evidence.  As such, because the ALJ failed to adequately develop the record as to certain of the domains and failed to adequately consider the cumulative impact of multiple moderate limitations, this Court recommends a remand for further development of the record.

### i.   Acquiring and Using Information

This domain considers the child's ability to acquire or learn information and how well the child uses the information she has learned.  20 C.F.R. § 416.926a(g).  A school-age child (*i.e.* at least six, younger than twelve) should be able to read, write, perform math, and

10

discuss history and science.  The child should be able to demonstrate these skills both in academic situations and in daily living.  20 C.F.R. § 416.926a(g)(2)(iv).

The Regulations provide examples of limited functioning with respect to this domain. For example, a child might have limited functioning if he or she does not demonstrate understanding of words about space, size, or time; cannot rhyme words or the sounds in words; has difficulty recalling information learned in school the previous day; has difficulty solving mathematical problems; and/or talks in short, simple sentences and his difficulty explaining what he or she means.  20 C.F.R. § 416.926a(g)(3).

The ALJ concluded that Claimant has "some" limitation in acquiring and using information, but that the limitation was less than marked.  (T at 23).

In support of this finding, the ALJ cited a Teacher Questionnaire provided by the New York State Office of Temporary and Disability Assistance Division of Disability Determinations and completed by Pamela Hollinde, Claimant's third grade teacher.  (T at 123).  Ms. Hollinde noted that Claimant has a "serious problem" understanding and participating in class discussions, providing organized oral explanations and adequate descriptions, and applying problem-solving skills in class discussions.  (T at 124).  Ms. Hollinde further stated that Claimant has an "obvious" problem comprehending oral instructions and comprehending and doing math problems. (T at 124).

Ms. Hollinde explained that Claimant has a "slight" problem understanding school and content vocabulary, reading and comprehending written material, expressing ideas in written form, learning new material, and recalling and applying previously learned material. (T at 124).

Mark Kamauff, Claimant's fourth grade teacher, likewise completed a Teacher

11

Questionnaire. (T at 227).  Mr. Kamauff described Clamaint's ability to comprehend and do math problems, understand and participate in class discussions, and apply problem-solving skills in class discussions as "very serious" problems.  (T at 228).  Mr. Kamauff noted that Claimant was becoming "more independent" with regard to reading, but had an obvious problem comprehending oral instructions, understanding school and content vocabulary, and reading and comprehending written material.  (T at 228).

Lisa Newman, a non-examining State Agency psychiatrist, reviewed the record and opined that Claimant had "less than marked" limitation with regard to acquiring and using information.  (T at 170).  Dr. Newman concluded that Claimant's standardized testing scores did not indicate a delay severe enough to demonstrate marked or extreme limitation as to this domain.  In addition, Dr. Harvey Scherer, Claimant's treating psychiatrist, opined that Claimant "functions in the average range of intelligence." (T at 97).

In light of the foregoing, this Court finds that the ALJ's conclusion that Claimant does not have a "marked" limitation with regard to acquiring and using information was supported by substantial evidence.  A "marked limitation" exists when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(I).  While it is undisputed that Claimant's ability to acquire and use information is somewhat limited, substantial evidence supports the ALJ's finding that the limitation is not "marked."

Although the ALJ did not analyze the impact of Claimant's structured educational environment as to her limitations with respect to this domain, the ALJ's decision was also supported by standardized test results and the opinion of Claimant's treating psychiatrist. As such, this Court finds that this particular aspect of the ALJ's decision was supported by

12

substantial evidence.

### ii.    Attending and Completing Tasks

In this domain, the Commissioner considers the child's ability "to focus and maintain . . . attention," and how well she can "begin, carry through, and finish . . . activities, including the pace at which [she] perform[s] activities and the ease with which [she] change[s] them." 20 C.F.R. § 416.926a(h).

With regard to this domain, a school-age child is expected to focus attention in a variety of situations in order to follow directions, remember and organize school materials, and complete classroom and homework assignments. The child should be able to concentrate on details and not make careless mistakes in work (beyond what would be expected in other children of like age who do not have impairments). The child should be able to change activities or routines without distracting himself/herself or others, and stay on task and in place when appropriate. The child should be able to sustain attention well enough to participate in group sports, read independently, and complete family chores. The child should also be able to complete a transition task (*e.g.*, be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation. 20 C.F.R. §416.926a (h)(2)(iv).

The Regulations provide examples of limited functioning with respect to this domain. For example, a child might have limited functioning if he or she is easily startled, distracted, or overreactive to sounds, sights, movements, or touch; slow to focus on, or fail to complete activities of interest; repeatedly becomes sidetracked from activities or frequently interrupts others; becomes easily frustrated and gives up on tasks; and requires extra supervision to remain engaged in an activity. 20 C.F.R. §416.926a (h)(3).

13

In the present case, Claimant's Individualized Education Plan ("IEP") requires that she be given extended time for taking tests, which were to be administered in a small group and separate location.  (T at 137).  Plaintiff testified at the hearing before the ALJ and stated that Claimant is "very easily distracted," she "fidgets" while doing homework (taking approximately four hours to complete her assignments), and cannot complete household chores independently.  (T at 266, 271-72).

The ALJ concluded that Claimant has "some limitations" in this domain, but that the limitations were neither marked nor extreme. (T at 24).

Ms. Hollinde noted that Claimant has a "serious problem" refocusing to task when necessary and an "obvious" problem focusing long enough to finish an assigned activity or task, carrying out multi-step instructions, completing work accurately without making careless mistakes, working without distracting herself or others, and working at a reasonable pace.  (T at 125).

Although Ms. Hollinde did not describe any of Claimant's problems related to attention and completion of tasks as "very serious," she stated that Claimant had a "slight" problem paying attention when spoken to directly, sustaining attention during play and sports activities, carrying out single-step instructions, and completing class and homework assignments.  (T at 125).

Mr. Kamauff indicated that Claimant has a "serious" problem sustaining attention during play and sports activities.  (T at 229).  Mr. Kamauff stated that Claimant had only a "slight" problem working at a reasonable pace, changing from one activity to another, and carrying out multi-step instructions.  (T at 229).

Dr. Harvey Scherer, Claimant's treating psychiatrist, opined that her attention span

14

was "fine on her present medication." (T at 104).   Dr. Newman, the non-examining psychiatrist, determined that Claimant's ability to attend to and complete tasks was "less than marked." (T at 170).

In light of the foregoing, this Court finds that the ALJ's conclusion that Claimant does not have a "marked" limitation with regard to this domain was supported by substantial evidence.   Again, the ALJ's determination was not limited to the school records, but was supported by the opinion of Claimant's treating psychiatrist.

### iii.    Interacting and Relating

In this domain, the Commissioner considers the child's ability to "initiate and sustain emotional connections with others, develop and use the language of [his or her] community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." 20 C.F.R. § 416.926a(i).

With regard to this domain, a school-age child is expected to develop lasting friendships with children his or her age, begin to understand how to work in groups to create projects and solve problems, have an increasing ability to understand another's point of view and to tolerate differences. A school-age child "should be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand." 20 C.F.R. § 416.926a(i)(2)(iv).

The Regulations provide examples of limited functioning with respect to this domain. For example, a child might have limited functioning if he or she does not reach out to be picked up and held by a caregiver, has no close friends, avoids or withdraws from people he or she knows, or is overly anxious or fearful of meeting new people or trying new experiences, has difficulty playing games or sports with rules, has difficulty communicating

15

with others or in asking others for assistance, has difficulty speaking intelligibly or with adequate fluency.  20 C.F.R. §416.926a (i)(3).

The ALJ concluded that Claimant has "some problems with social interaction," but that those problems were not sufficient to rise to the level of marked or extreme. (T at 25).

Claimant clearly has problems interacting and relating to others.  The record contains numerous documented incidents of such problems, including aggression toward adults and children, calling peers names, throwing temper tantrums, and becoming withdrawn. (T at 109, 112, 115, 117, 120, 124).  Claimant was diagnosed as having oppositional defiant disorder, a condition noted for causing difficultly with regard to interpersonal interaction. (T at 106).

Although the record evidence documents Claimant's progress over time as to this domain, that progress occurred almost exclusively in the structured school setting.  The 2004 IEP indicated that Claimant "relates appropriately to adults and peers." (T at 138).  In the Progress Report completed at the end of second grade, Ms. Hollinde noted that Claimant met expectations with regard to developing and maintaining friendships and was developing toward expectations in terms of interacting with adults respectfully and cooperatively and contributing to the class community.  (T at 145).

However, in the Teacher Questionarrie, Ms. Hollinde indicated that Claimaint had a "serious" problem playing cooperatively with other children, seeking attention appropriately, and expressing anger appropriately.  (T at 126).

Mr. Kamauff stated that Claimant was "improving socially" and noted that she was "not a distraction in class." (T at 234) (emphasis original).  However, Mr. Kamauff found that Claimant has a "serious problem" playing cooperatively with other children, making and

keeping friends, and expressing anger appropriately. (T at 230).  Mr. Kamauff further noted that Claimant had a "slight" problem following rules, respecting and obeying adults, relating experiences and telling stories, and introducing and maintaining relevant and appropriate topics of conversation. (T at 230).

A psychoeducational report prepared under the supervision of psychologist Nancy Chicoine indicated that "overt problems [were] not noted in the classroom." (T at 206).  The examiner opined that Claimant was "functioning well in her current classroom situation." (T at 206).

Dr. Scherer, Claimant's treating psychiatrist, originally diagnosed Claimant as suffering from oppositional defect disorder. (T at 100).  In two reports completed two (2) weeks apart in late summer 2004, Dr. Scherer omitted that diagnosis in his reports, noting that Claimant played with other children and showed other signs of improvement.  (T at 97-98).  However, Dr. Scherer did not expressly indicate that Claimant no longer had the disorder or otherwise explain his decision to omit the disorder from these two particular reports.

Dr. Newman, the non-examining psychiatrist, noted the evidence that Claimant has few friends and is sometimes uncommunicative, but determined that Claimant's ability to interact and relate with others was "less than marked." (T at 170).  Dr. Newman particularly noted the above-referenced school reports and medical records, indicating that Claimant was making progress with regard to social interaction and was no longer a problem in the classroom.  (T at 170).

Plaintiff testified that Claimant is physically aggressive toward people and has "[v]ery few" friends because of her behavior. (T at 266).

17

As noted above, the record evidence certainly indicates that Claimant has difficulty with regard to interacting and relating to others.  The ALJ's decision to rely upon Claimant's progress in school is undermined by his failure to consider her social functioning outside of her structured school environment.  The progress made by Claimant at school appears to be limited to that setting and, in any event, appears somewhat uneven and incomplete.

It is with regard to this domain that the ALJ's failure to develop the record can perhaps best be seen.  The question is whether Claimant is limited in her ability to interact with and relate to others.  Claimant lives with several other people, only one of whom (Plaintiff) testified, and that testimony strongly suggested a marked limitation.  Before discounting that testimony based upon Claimant's progress in school, the ALJ was obligated to develop the record regarding Claimant's functioning outside of the structured school setting.  This Court therefore recommends a remand for further development as to this issue.

### iv.    Caring for Self

In this domain, the Commissioner considers the child's ability to "maintain a healthy emotional and physical state, including how well he or she gets physical and emotional wants and needs met in appropriate ways; copes with stress and changes in environment; and whether the child can take care of his or her own health, possessions, and living area. 20 C.F.R. § 416.926a(k).

With regard to this domain, a school-age child is expected to be independent in most day-to-day activities (*e.g.*, dressing, bathing), although the child may still need to be reminded sometimes to do these routinely. The child should begin to recognize that he or she is competent in doing some activities and has difficulty with others. The child should

18

begin to develop understanding of right and wrong, and what is acceptable and unacceptable behavior. He or she should begin to demonstrate consistent control over behavior, and avoid behaviors that are unsafe or otherwise not beneficial. 20 C.F.R. § 416.926a(k)(2)(iv).

The Regulations provide examples of limited functioning with respect to this domain. For example, a child might have limited functioning if he or she continues to place non-nutritive or inedible objects in his or her mouth, often uses self-soothing activities showing developmental regression or has restrictive or stereotyped mannerisms, does not dress or bathe themself age appropriately; engages in self-injurious behavior or ignores safety rules, does not spontaneously pursue enjoyable activities or interests, and/or has a disturbance in eating or sleeping patterns.  20 C.F.R. §416.926a (k)(3).

The ALJ found that Claimant has a less than marked limitation in the ability to care for herself. (T at 27).

Mr. Kamauff stated that Claimant has an "obvious" problem handling frustration appropriately, being patient, identifying and appropriately asserting emotional needs, using appropriate coping skills to meet daily demands, and responding appropriately to changes in her mood.  (T at 232).  Mr. Kamauff also noted a "serious" problem in terms of knowing when to ask for help.  (T at 232).  However, he described Claimant as having no problem taking care of personal hygiene. (T at 232).  Mr. Kamauff noted that Claimant does a "good job of staying under control in the classroom," but has "difficulty" in the presumably less structured gym class.  (T at 232).

Ms. Hollinde noted a "very serious" problem identifying and asserting emotional needs and knowing when to ask for help.  Although she stated that Claimant had no

problem with personal hygiene and caring for personal needs, Ms. Hollinde explained that Claimant had a "slight" problem using good judgment regarding safety and dangerous circumstances.  (T at 128).  Ms. Hollinde further explained that the teachers were required to "constantly" work with Claimant to try to verbalize her needs.  (T at 128).

Plaintiff testified that Claimant caused an hour-long school lockdown by hiding while teachers and staff searched frantically for her and called her name over the loudspeaker. (T at 270).

Dr. Scherer, Claimant's treating psychiatrist, consistently described Claimant as having poor impulse control, frustration tolerance, and judgment.  (T at 97-101).

Dr. Newman, the non-examining psychiatrist, concluded that Claimant has less than marked limitation with regard to her ability to care for herself.  (T at 172).  However, this conclusion was contained in a tersely worded three sentence summary lacking in meaningful explanatory detail. (T at 172).

In light of the foregoing, this Court finds that the ALJ's conclusion that Claimant does not have a "marked" limitation with regard to this domain cannot be supported based upon the present evidence.   The ALJ relied almost exclusively upon the assessments of Claimant's teachers without considering the impact of the structured setting on Claimant's ability to care for herself.  Moreover, the ALJ's reliance on the non-examining psychiatrist's finding is misplaced as that finding is conclusory and lacking in foundation.  Lastly, the testimony of Claimant's housemates would have been particularly helpful in determining her ability to care for herself outside of the structured school setting.  A remand for further consideration is therefore recommended.

### v.    Cumulative Effect

As to each of the domains discussed above, the ALJ concluded that Claimant had at least some limitation.  On remand, in addition to developing the record and considering Claimant's level of functioning outside of the structured school setting, the ALJ should also consider the cumulative effect of several moderate impairments. See Encarnacion ex rel. George v. Barnhart, 331 F.3d 78, 90 (2d Cir. 2003) ("[W]e conclude that the Act appears to require that each of a claimant's impairments be given at least some effect during each step of the disability determination process.").

### 3.    Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).

Given the deficiencies in the record as outlined above, it is recommended that the case be remanded for further proceedings consistent with this Report and Recommendation.

## IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the decision of the Commissioner be reversed, and that the case be remanded to the Commissioner pursuant

to sentence four of 42 U.S.C. § 405 (g) for further administrative proceedings consistent with this Report and Recommendation.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   April 13, 2009

Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE**

**OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

April 13 , 2009

Victor E. Bianchini
United States Magistrate Judge

23